JUDGE PHILIP MARTINEZ

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

2021 OCT 22 PM 4:00

| | |
|---|---|
| BRANDON CALLIER,<br>Plaintiff,<br><br>v.<br><br>CAROLINA ROCHA,<br>QUOTEFIRE.COM, LLC, and THE<br>ALLSTATE CORPORATION<br>Defendants | § § § § § § § § § § § §   **EP20CV0266** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is Brandon Callier, a natural person, and was present in Texas for all calls, in this case in El Paso County.

2. Defendant Carolina Rocha is a natural person and resident of El Paso, County and can be served at 5400 N Mesa Street, Suite C, El Paso, TX 79912.

3. The Defendant QuoteFire.com, LLC is a California corporation and can be served via registered agent Harrison Green, 11282 Washington Boulevard, Suite 103, Culver City, California 90230.

4. Defendant The Allstate Corporation is a Delaware corporation and can be served via registered agent The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

### JURISDICTION AND VENUE

5. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA

1

claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

6. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

7. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

8. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N.

2

1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel.*

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

*Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS

4

159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

22. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

23. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

24. The Plaintiff has received at least two calls over 30 days to his cell phone, 915-800-6070 without consent and not related to an emergency purpose, selling car insurance.

25. On September 14, 2020 when the Plaintiff answered the phone a recording came on saying the Plaintiff's car insurance payment was behind and to "press one to be connected to a representative."

26. Plaintiff pressed one and was connected with a representative from Quotefire.com, LLC (Quotefire).

27. Plaintiff informed the Quotefire representative he did not have insurance with the Defendant and this must be some kind of mistake.

28. The Quotefire representative informed the Plaintiff it was a sales call and asked the Plaintiff if he might be interested in a car insurance quote.

29. The Plaintiff did not want or need car insurance. However, in order to cease harassment from the

anonymous robocallers, such as the defendants, Plaintiff told the representative he needed car insurance for the sole purpose of identifying who was calling and/or the company who was responsible for calling.

30. Plaintiff was then connected to Allstate Agent Carolina Rocha who took the Plaintiff's information for the purposes of generating a car insurance quote.

31. Plaintiff then received an email (exhibit A) from CarolinaRocha@Allstate.com with a quote for car insurance through Allstate Insurance Company.

32. On September 15, 2020, Plaintiff called the Allstate office at 915-706-2711 and informed the receptionist he "had received an unsolicited automated call received from Allstate" and "needed to know what company makes their automated sales calls." After being transferred Plaintiff was told by the representative that "Quotefire.com makes our sales calls" and was given the number 844-631-8307.

33. Plaintiff received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of Allstate and agent Carolina Rocha. The calls generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS. The Plaintiff received at least two calls in 30 days.

34. Each and every call was initiated using a spoofed caller ID, and each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

35. Plaintiff received the following calls from the Defendants (Table A).

| Date | Time of Call | Phone Number | Name on Caller ID |
|---|---|---|---|
| 14-Sep-20 | 10:10 AM | 512-768-9195 | UNKNOWN NAME |
| 4-Sep-20 | 1:46 PM | 346-727-8758 | UNKNOWN NAME |

6

36. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

37. Mr. Callier has a limited data plan. Incoming text messages chip away at his monthly allotment.

38. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

39. No emergency necessitated the calls

40. Each call was sent by an ATDS.

41. None of the defendants ever sent Mr. Callier any do-not-call policy.

42. On information and belief, the defendant did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls

43. On information and belief, the defendant did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

**Vicarious Liability of the Sellers**

44. These parties are vicariously liable under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

45. The Allstate Corporation (Allstate) and Carolina Rocha are the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain the Plaintiff as a client and quoted the Plaintiff their services in obtaining car insurance.

46. The email shows that the beneficial parties who were gaining customers were Allstate and Carolina

Rocha.

47. Allstate and Carolina Rocha authorized Quotefire to generate prospective customers. Allstate and Carolina Rocha hired Quotefire to promote its products and services. Allstate's integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that Defendant Quotefire was the telemarketing department of Defendant Allstate.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

48. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

49. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

50. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

51. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

52. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

53. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

- Reduced Device Storage space

- Reduced data plan usage
- Invasion of privacy
- Decreased cell phone battery life
- More frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone
- Reduced battery usage
- Annoyance
- Frustration
- Anger

### The Plaintiff's cell phone is a residential number

54. The calls were to the Plaintiff's cellular phone 915-800-6070 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

55. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

56. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent.

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF

**(Violations of The Texas Business and Commerce Code 305.053)**

11. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for seven calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

    F.    An award to Mr. Callier of damages, as allowed by law under the TCPA;

    G.    An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

    H.    Such further relief as the Court deems necessary, just, and proper.

October 22, 2020

*(signature)*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604

# Exhibit A

 Gmail

Brandon Callier <callier74@gmail.com>

## Your insurance proposal: please review and confirm
3 messages

**Carolina Rocha** <allstate@quote01.email-allstate.com>  Mon, Sep 14, 2020 at 12:24 PM
Reply-To: CAROLINAROCHA@allstate.com
To: "CALLIER74@GMAIL.COM" <CALLIER74@gmail.com>



# Your Allstate Personalized Insurance Proposal℠

   **915-600-6165 >**     **Email >**     **Site >**

**Hi Brandon Callier,**

We've prepared a Personalized Insurance Proposal just for you. After you've had a chance to review, let's talk to make sure all the protection, coverage and discounts you need are included.

**Brandon Callier, ready to take advantage of discounts on an Allstate policy?**

Join the Allstate family: personal insurance right in your neighborhood.

Sincerely,

Carolina Rocha

**915-600-6165**

**CAROLINAROCHA@ALLSTATE.COM** >

**Book an appointment** >



Allstate Blog | Tools & Resources | Allstate.com

This email was sent to Brandon Callier at CALLIER74@GMAIL.COM

Savings and coverages subject to terms, conditions and availability.

Allstate Insurance Company. Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company. Allstate Assurance Company and their affiliates: 2775 Sanders Road, Northbrook, IL 60062. In New Jersey, Allstate New Jersey Insurance Company, Bridgewater, NJ. In New York Allstate Life Insurance Company of New York, Hauppauge, NY.

©2020 Allstate Insurance Company. All rights reserved.   Privacy Statement   |   Contact Us   |   Unsubscribe

P_STRATEGICDISTRIBUTION_E0417_PIPPROSMP_T
EMAIL_TO.CAROLINAROCHA@ALLSTATE.COM

---

**Carolina Rocha** <allstate@quote01.email-allstate.com>  Mon, Sep 14, 2020 at 12:26 PM
Reply-To: CAROLINAROCHA@allstate.com
To: "CALLIER74@GMAIL.COM" <CALLIER74@gmail.com>

[Quoted text hidden]

---

**Brandon Callier** <callier74@gmail.com>  Mon, Sep 14, 2020 at 2:41 PM
To: Craig <bigcraig79@gmail.com>

[Quoted text hidden]